IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PAUL KEITH REYES**,

    Plaintiff,

vs.                                                                                                     Civ. No. 09-1174 WPL/RHS

**THE STATE OF NEW MEXICO, MAYOR MARTIN CHAVEZ,
JUSTIN E. LEE, BRUCE MINCHOW, LIEUTENANT GONZALES,
A. TORRES, J. MILLER, C. MAGEE, A. MEDRANO**,

    Defendants.

## ORDER DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on Plaintiff Paul Keith Reyes' Motion to Proceed *In Forma Pauperis* with Financial Affidavit, filed December 44, 2009, *see* Doc. 3, and on the Court's concomitant obligation "to review the affidavit and screen his case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. Even if a plaintiff is indigent, if a complaint that a plaintiff seeks to file without prepaying filing fees fails to state a claim on which relief may be granted, it must be dismissed. *See* § 1915(e)(2)(B)(ii); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal of such complaints is mandatory under § 1915(e)(2)(B)(ii)).

Reyes has consented, under 28 U.S.C. 636(c) and FED. R. CIV. P. 73(b), to have United

States Magistrate Judge William P. Lynch conduct all proceedings in this case.  *See* Doc. 4.

**I.  Reyes has failed to submit sufficient documentation.**

Regarding the ability-to-pay prong of the IFP analysis, IFP status should be granted only if a plaintiff demonstrates that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life."  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

The Court first notes that Reyes did not file, as required by 28 U.S.C. § 1915(a)(1), a properly signed "affidavit," which is a "statement of facts confirmed by oath before a judicial officer having authority to administer the oath," 2A C.J.S. *Affidavits* § 1 (2009); *Kiehne v. Atwood*, 93 N.M. 657, 667, 604 P.2d 123, 133 (1979), or signed under penalty of perjury, *see* 28 U.S.C. § 1746 (allowing federal requirements of an affidavit to be satisfied by a writing signed by the individual and "subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date). (Signature).'").  Failure to "fill out the proper forms or to otherwise provide the district court with the requisite information" in a sworn affidavit is grounds to deny a motion to proceed IFP because the Court is not required to rely on a plaintiff's "bald assertions" that he is unable to pay fees.  *Lister*, 408 F.3d at 1313.  The affidavit requirement also serves as a deterrent function because "[o]ne who makes this affidavit exposes himself to the pains of perjury in a case of bad faith. . . . This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits." *Adkins*, 335 U.S. at 338 (internal quotation marks omitted).  The perjury sanction thus serves to protect the public against misuse of public funds by a litigant with adequate funds of his own.  Reyes appears to be playing games with his signature, now using a symbol of some sort instead of signing his name.  *See* Doc. 3 at 4.  Someone

handwrote "Paul Reyes Jr. signature" below the symbol that is on the line for the "Signature of Applicant/Affiant," Doc. 3 at 4, but Reyes lists his name in the style of his Complaint as "Paul Keith Reyes," not as "Paul Reyes Jr.," Complaint at 1. In other legal documents attached to his Complaint, Reyes has signed his name with the words of his name, not with a single symbol, so he clearly is capable of signing his legal name. *See, e.g.* Complaint at 22.

Further, Reyes' unsigned financial statement is inconsistent and gives insufficient information. For example, he states that he has a "dependent" named "Aidan E. Austin" but that he is "single" as opposed to divorced, and has no children living with him, and he lists no debt for child support. Doc. 3 at 1. He states that he has lived at the same address for about twenty years but that he owns no property and pays no rent, but pays $40/month for "utilities" as his only living expense and only debt. *Id.* at 2-3. Documents attached to his Complaint indicate that Reyes lives with his father, Pablo Reyes. *See* Complaint at 16. Reyes states that he has income of approximately $100-175/month as a "self-employed" "laborer" working for his father's firewood business that is run out of his father's home. *Id.* at 1, 16. Reyes has not submitted sufficient sworn evidence that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins*, 335 U.S. at 339.

## II.     Reyes fails to state a cognizable federal claim against the Defendants.

Reyes' 108-page Complaint, which is heavily interspersed with irrelevant exhibits and documents from other federal and state civil cases, the New Mexico taxation and revenue department, state-inmate information requests, probation and plea documents from a criminal case, and his father's social-security proceedings, is difficult to decipher. Reyes alleges jurisdiction under 42 U.S.C. §§ 1983, 1985, and 1986, and 28 U.S.C. § 1343, 42 U.S.C. § 1462 (dealing with the "Intergovernmental Personnel Program"), as well as various federal criminal statutes. *See*

Complaint at 1.

The Court will analyze Reyes' claims regarding each Defendant. In screening the complaint under § 1915(e)(2)(B), the Court resolves the issue of whether it states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under FED. R. CIV. P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level. In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted). In screening the Complaint, the Court will accept as true Reyes' factual allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Reyes. *See id.* at 1217.

But in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the more recent case of *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted. In *Twombly*, the Court noted that the pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," 550 U.S. at 555, but the Rule demands more than an unadorned "defendant-unlawfully-harmed-me" account, *Iqbal*, 129 S. Ct. at 1949. The Supreme Court warned against pleadings that offer "labels and conclusions" or "a formulaic recitation of the elements of the cause of action . . . ." These, the Court stated, "will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. In *Ashcroft v. Iqbal*, the Supreme Court noted:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a

4

>claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

### A. General allegations.

Reyes contends that he "was deprived of civil rights and the freedom to free enterprise. Reyes will continue to suffer similar damage in the future if the U.S. courts do not intervene . . . ." Complaint at 3, ¶ 14. "As a result of these officials actions, Reyes was prevented from transacting his business, suffered great pain of body and mind and the named defendants are responsible for the damages in the amount of 10 million dollars." *Id.* ¶ 15. These allegations are conclusory and are not accepted as true. Reyes alleges that he "has been trying for a long time to liscense [sic] and pay local taxes for a small business, Austin's Firewood Fuels." Complaint at 4. But the attachment Reyes incorporates into his Complaint shows that the Reyes has represented to the State that the business is actually owned by Pablo Reyes, and that Paul K. Reyes, the plaintiff in this case, is simply an employee. *See* Complaint at 16. Reyes states that he "suspects a conspiracy against him" among all the defendants since 1991. *Id.* at 4-5. He requests that the Court "sentence" the defendants "if they are found guilty of the alleged charges." *Id.* at 5.

### B. The State of New Mexico

Although Reyes mentions Eleventh-Amendment immunity for § 1983 actions in his Complaint, *see* Complaint at 10, he nevertheless named the State of New Mexico as a Defendant. His Complaint, however, makes no factual allegations explaining an alleged basis for the State's liability, and it has long been held that § 1983 does not abrogate state sovereign immunity and that

5

"neither a state nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989). Absent Congress's specific abrogation of immunity, "nonconsenting States may not be sued by private individuals in federal court" regardless of the form of relief requested. *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (internal quotation marks, bracket omitted). Any claims against the State of New Mexico must be dismissed for failure to state a cognizable claim.

**C. Mayor Martin Chavez**.

In Count 1, Reyes states that he "suspects that Mayor Martin Chavez's in your face Police protection policy during his term as Mayor for the City of Albuquerque is a contributing factor behind the Police's conspiracy . . . ." *Id.* at 8. There are no specific factual allegations regarding Chavez in the Complaint. There are also no facts showing how a police protection policy has contributed to any harm that Reyes has allegedly suffered. Reyes has failed to state a cognizable claim for conspiracy against Chavez, *see Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (noting that § 1985(3) was intended only to reach conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus") (internal quotation marks omitted), and Count 1 must be dismissed with prejudice because it would be futile to allow Reyes an opportunity to amend his Complaint against former Mayor Chavez, who has had no interaction with Reyes according to the Complaint. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (internal quotation marks omitted).

**D. Justin E. Lee.**

Lee is the only individual named in Count 2 of Reyes' Complaint. Lee is a police officer for

the City of Albuquerque, stationed at the Shawn McWhethey Memorial Substation. Complaint at 1. Reyes "suspect[s]" Lee of "taking part in a conspiracy to deprive civil rights" under § 1983 "and to extort, racketeer Reyes's belongings in violation of 18 U.S.C. § 1851, 18 U.S.C. § 1862, along with illegally searching and seizing Reyes" and "interference with commerce" by unidentified actions on an unidentified date. *Id.* at 5. Liberally reading Reyes' Complaint, it may be that Reyes is attempting to accuse Lee of being one of the "two undercover officers and 2 out of uniform officers" who are unnamed and who allegedly "interfer[ed] with Reyes's attempts to conduct free trake [sic] with his small business Austin's Firewood Fuels" by arresting and searching him on an undisclosed date and filing "no Police report of any kind." Complaint at 10-11. Reyes alleges that the unnamed individuals compelled him to go to the Downtown Albuquerque Prisoner Transportation precinct, where he was detained and later released without charges being brought. *See id.* at 12. He states that his arrest "prevented from transacting his business, suffered great pain of body, mind, and suffered a loss of wages . . . ." *Id.* Reyes refers to a state-court suit that he filed against the Shawn McWhethy Memorial Substation involving a different officer in May 2005, which he incorporated into his Complaint, *see id.* at 21, to an August 2004 state-court suit he filed against officers *not* named in this Complaint for unlawful search, *see id.* at 25, and to a November 2006 federal suit filed against the Shawn McWhethey Substation that mentions two other officers who also are *not* named in this suit, *see id.* at 27.[1]

---

[1] In *Reyes v. Shawn McWhethey Memorial Substation*, No. 06cv1131 LH/LFG Doc. 5 (D.N.M. Jan. 8, 2007), Judge Hansen dismissed Reyes' suit brought under § 1983 without prejudice because Reyes sued the substation, which is not a legal entity amenable to suit under § 1983. *See id.* at 4. The Court noted that Reyes mentioned specific officers in the Complaint, but that his allegations were "vague and unclear" and "conclusory." *Id.* at 4-5. The Court instructed Reyes that he should follow the statutory pleading requirements as discussed in two specific cases if he decided to amend his complaint and file a subsequent suit. *See id.* at 5.

Reyes also refers to documents demonstrating that he was convicted and sentenced in 2004 in state court for bribery of a witness and battery, *see id.* at 40, 78, which he contends he "did not commit" and he further refers to an allegedly unfair plea agreement and to being "starved, harassed, and denied access to the courts," while at the Bernalillo County Metropolitan Detention Center ("BCMDC"), *id.* at 78, 48-53, 66-77.  Reyes also submitted copies of documents showing that he sued a different officer and the BCSD in 2004, and that certain Defendants were granted summary judgment, *see id.* at 80-87, and other claims were dismissed for lack of prosecution, *see id.* at 95. Nothing in any of these documents makes any reference to Lee, and they are irrelevant to a claim against Lee.

In his summary paragraph for Count 2, Reyes contends that he has been "denied licenses to drive valid hearings and most importantly incarcerated at the discretion" of the Second Judicial District Court, and requests that this Court "intervene since there is a danger of injury."  Complaint at 96.  There is nothing to connect officer Lee with Reyes' alleged injuries and requests for relief, and the Court will not create allegations for Reyes.  Further, this Court may not intervene in state-court criminal or licensure proceedings or reverse or overturn Reyes's convictions under the *Rooker-Feldman* and *Younger*-abstention doctrines.

> "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced."  *Lance v. Dennis*, 546 U.S. 459, 460, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (quotations omitted) (per curiam); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 68 L. Ed. 362 (1923).  *Younger* abstention applies even if the state proceedings are on-going when the federal action is filed so long as the state action implicates important state interests with which a federal judgment would interfere.  *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1227-28 (10th Cir. 2004) (citing *Younger v. Harris*, 401 U.S. 37, 54, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)).

*DCR Fund I, LLC v. TS Family Ltd. P'ship*, 261 Fed. Appx. 139, 146 n.5 (10th Cir. 2008).  Count 2 must be dismissed against Lee or any other defendant.

### E.  Bruce Minchow

Minchow "is employed as an officer in the Albuquerque evidence room" for the Albuquerque Police Department.  Complaint at 2.  Reyes "suspect[s]" Hinchow of "taking part in a conspiracy to deprive civil rights" in violation of § 1983 and to "extort and racketeer Reyes's belongings in violation of" several federal criminal statutes and sentencing guidelines.  *Id.* at 6.  In Count 3 of Reyes' Complaint, Reyes contends that the evidence room "has a history of extorting and racketeering Reyes's personal belongings," Complaint at 97, and he refers to a document showing that officer D. Walton took Reyes' bike on March 11, 2003 after Reyes' arrest for disorderly conduct, *see id.* at 35.  Reyes alleges that, over six years later, on August 24, 2009, Reyes "called evidence for a return of personal property;" and that "Minchow made some phone calls before I went to talk to him at the front door" and then said, "'No one knows anything about your case.'"  Complaint at 97.  Reyes requests the court to "intervene pursuant to *Younger v. Harris*, 91 S.Ct. 757 (1971)."  *Id.*

Reyes has failed to allege sufficient facts to show that Officer Minchow violated Reyes' constitutional or federally-protected rights.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Count 3 should be dismissed with prejudice because it would be futile to allow Reyes to amend his claim based on an alleged loss of property occurring in 2003, *see Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (stating that district courts have the authority to raise the statute-of-limitations defense *sua sponte* when it is "patently clear from the face of the complaint [or] rooted in adequately developed facts"), as such a claim would be barred by the three-year statute of limitations for § 1983 claims, *see Mondragon v. Thompson*, 519 F.3d 1078, 1081 (10th Cir. 2008), and his Complaint

"indicates that he would have no meritorious tolling argument," *Arroyo v. Starks,* Nos. 08-3121, 08-3134, ___ F.3d ___, ___, 2009 WL 4827370, *4 (10th Cir. Dec. 16, 2009).

### F.  Lieutenant Gonzales and Officers A. Torres and J. Miller

According to the Complaint, Lt. Gonzales and Officers Torres and Miller are employed by the BCMDC. Complaint at 2-3. Reyes states that he "suspect[s]" that Gonzales is "taking part in a conspiracy to deprive civil rights" in violation of § 1983. *Id.* at 6. But the only factual allegations regarding these Defendants are that, on July 31, 2009, Reyes asked Torres to take him to an August 3, 2009 hearing in state court; that three days later, Reyes asked Miller to be taken to the August 3 hearing; that Reyes asked Miller to "'let his boss know;'" and that Miller told Reyes that Lt. Gonzales said "'to call a public defender.'" *Id.* at 7. Reyes next states that the "jail in connection with the courts have a history of dening [sic] Reyes meaningful access to the courts for law research and scheduled hearings." Complaint at 7. In Count 4, Reyes restates these facts and concludes that "Reyes was deprived of his Civil rights to atend [sic] the hearing" and that he was entitled to notice and a hearing "on the grounds for his rejection" before it occurred. Complaint at 98. Reyes contends that he suffered "mental pain and anguish" from the rejection. *Id.* He does not allege facts showing, however, whether the August 3 hearing was in a criminal or civil case; whether it was conducted in his absence or telephonically or continued; and he does not allege he suffered any damage to a liberty interest or that he suffered any negative legal consequences from not attending the August 3 hearing. These facts, therefore, do not state a claim for violation of § 1983. *See Curtis Ambulance of Fla., Inc. v. Board of County Com'rs*, 811 F.2d 1371, 1375 (10th Cir. 1987) (noting that, to allege a due-process claim, a plaintiff must show that he had "a definite liberty or property interest and that such interest was, under color of state law, abridged without appropriate process"). They also do not state a claim for conspiracy under § 1985. *See Tilton*, 6 F.3d at 686. Insofar as he

was attempting to state a due-process violation, Count Four will be dismissed without prejudice.

### G.  C. Magee and A. Medrano

C. Magee and A. Medrano are employed as officers with the BCSD.  *See* Complaint at 2. Reyes states that "the first time Reyes began to do commerce in his vehicle" while working for "his father's small business," Magee and Medrano "pulled over the 1983 Ranger we use for our small business.  Claiming no stop and turn signals."  *Id.* at 7.  Reyes complains that the BCSD "also has a history of illegally searching and seizing Reyes's belongings along with aharassing [sic] Reyes," and he "suspects conspiracy to interfere with commerce."  *Id.*

In Count 5, Reyes refers to the 2004 state-court complaint he filed against the BCSD for "unlawfully taking [Reyes] into custody" in September 2003 for the crimes for which Reyes was later convicted.  *See id.* at 99, 86.  He attached the order allowing Reyes an opportunity to amend his complaint to include all of the additional claims against the BCSD that Reyes had mentioned at a hearing.  *See id.* at 80.  He also attached a November 2006 motion asking the state court to reinstate the case against an officer regarding his bicycle that was not returned to him and his claims against the BCMDC regarding not being allowed to access the law library, being attacked by inmates, and losing his residence and car.  *See id.* at 81.  He further attached the BCSD's December 19, 2006 response opposing the reinstatement because the BCSD had been granted summary judgment on all of Reyes' claims against it, and the order dismissing "all pending claims" for lack of prosecution in February 2008.  *See id.* at 83, 95.

Reyes clarifies and expands the general allegations made on page 7 of his Complaint in Count 5, stating that Magee and Medrano pulled over the truck *his father was driving*, in which Reyes was only a passenger, on December 1, 2009, "claiming that the lights were in the wrong place."  *Id.* at 99.  Reyes attached the traffic citation issued to his father for not having "brake lights

11

or turn signals." *Id.* at 101. Reyes states that his father was "on his way to a doctors appointment" and that "Reyes was going home from work at the time." *Id.* at 99. Reyes states that "these public officials seem not to understand to leave us alone." *Id.* Reyes contends that, as a result of Magee's and Medrano's actions, "Reyes a small business entrepreneur was prevented from transacting his business, suffered great pain of body, min [sic] and suffered a loss of wage." *Id.* at 105. Notwithstanding that the facts supporting Count 5 do not state a cognizable claim for relief of any kind and the claims against Magee and Medrano are frivolous, because Reyes has established that Pablo Reyes, and not himself, owns the firewood business that Reyes works for, and that the citation was issued to Pablo, Reyes has no standing or right to bring the claim in Count 5. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").

### H.  Claims brought under criminal statutes.

Insofar as Reyes has attempted to bring criminal claims against the Defendants or requests their prosecution, those claims are frivolous and must be dismissed with prejudice. *See generally Diamond v. Charles*, 476 U.S. 54, 64 (1986) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another") (internal quotation marks omitted); *Higgins v. Neal*, No. 94-1154, 52 F.3d 337 (Table), 1995 WL 216920 *1 (10th Cir. April 12, 1995) (noting that "courts universally endorse the principle that private citizens cannot prosecute criminal actions" and holding that the plaintiff lacked standing to maintain an action for violation of criminal statutes); *Mamer v. Collie Club of Am., Inc.*, No. 00-1066, 229 F.3d 1164 (Table), 2000 WL 1114237, *2 (10th Cir. Aug. 8, 2000) (noting that "private citizens cannot prosecute criminal actions").

Reyes has brought frivolous claims in this case. He filed five cases in this Court in 2009 and

one in 2006, five of which have now been dismissed as frivolous or for failure to state a claim or by stipulation. *See Reyes v. McWhethey Memorial Substation*, No. 06cv1131 LH/LFG (D.N.M. Jan. 8, 2007) (dismissing civil rights claim against substation for failure to state a claim); *Reyes v. Rivera*, No. 09cv0068 MCA/ACT (D.N.M. Sept. 14, 2009) (stipulated dismissal of civil-rights claims against two Valencia county police officers who were called for assistance during Reyes' encounter with employees at the Los Lunas branch of the taxation and revenue department); *Reyes v. Unknown Agents*, No. 09cv0069 MCA/WDS (D.N.M. Jan. 13, 2010) (dismissing civil rights complaint against officers employed by the Mountainair Police Department because Reyes could not show that the officers violated his constitutional rights); *Reyes v. Toulouse-Oliver*, No. 09cv0070 (D.N.M. February 2, 2009) (denying leave to proceed IFP and dismissing with prejudice case against clerk who refused to issue voter's registration card to Reyes because he is a felon for failure to state a claim), *aff'd* No. 09-2043 (10th Cir. Aug. 25, 2009); *Reyes v. Snow*, No. 09cv512 JCH/RHS (civil rights complaint against attorney and legal assistant employed by the Child Support division of Arizona's Human Services Department for seeking enforcement of child-support orders in New Mexico). Reyes is warned that if he continues to file frivolous complaints, sanctions and filing restrictions may be imposed against him.

**IT IS ORDERED** that Reyes' Motion to Proceed IFP [Doc. 3] is DENIED; that Counts 1, 2, 3, and 5 of his Complaint are DISMISSED with prejudice; that Count 4, insofar as Reyes may be attempting to allege a violation of due process, is DISMISSED without prejudice; and that the case is dismissed under § 1915(e)(2)(B).

*William P. Lynch*
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent